# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **GREGORY J. VAUGHN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **5:18-cv-00307-AKK** |
| **FEDEX FREIGHT, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Gregory J. Vaughn asserts claims against his employer, FedEx Freight, Inc., for purported violations of the Americans with Disabilities Act. Allegedly, FedEx regarded Vaughn as disabled after he attempted suicide and discriminated against him based on that perceived disability by unilaterally prohibiting Vaughn from working as a road driver for one year following the incident and by not preserving his job class seniority during that year. Doc. 1. Vaughn also asserts that FedEx retaliated against him after he complained about the discrimination. *Id.* FedEx moves for summary judgment, arguing that Vaughn cannot establish a prima facie case of discrimination or retaliation, or show that the reasons for its actions are pretextual. Doc. 34. For the reasons discussed below, particularly Vaughn's failure to show FedEx's proffered reasons for its actions are pretextual or to establish a prima facie case of retaliation, FedEx's motion is due to be granted.

## I.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version

of the disputed facts.  *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence).  However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion."  *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)).  Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## II.    RELEVANT FACTUAL BACKGROUND

### A.    <u>Relevant DOT Regulations and FedEx Policies</u>

Vaughn has worked as a road driver for FedEx or its predecessor since 1992. Doc. 42-4 at 5, 7, 79.  In that capacity, Vaughn transports freight overnight to different service centers near his home base in Decatur, Alabama, and FedEx pays him based in part on the distance he drives.  Docs. 41-1 at 3; 42-4 at 8; 42-2 at 7. Road Drivers, such as Vaughn, must hold a commercial driver's license, pass a physical performed by a physician certified by the Department of Transportation ("DOT"), and meet the relevant DOT and Federal Motor Carrier Safety Administration ("FMCSA") regulations.  Docs. 41-1 at 3; 42-4 at 7, 91.

The FMCSA provides safety oversight to commercial motor carriers, and under FMCSA regulations, a motor carrier may not allow a driver to operate a commercial motor vehicle if the driver may suffer from an impairment that makes it unsafe for her to operate the vehicle. Doc. 41-1 at 3 (citing 49 C.F.R. § 392.3). To comply with that requirement, FedEx generally adheres to the FMCSA Medical Guidelines regarding drivers' qualifications. *Id.* The Guidelines, which are based on expert review of "the available scientific literature," are recommendations to help medical examiners determine a driver's medical fitness for duty,[1] and are "considered best practice for commercial motor vehicle operators and carriers," doc. 41-1 at 3.

During the relevant time, FedEx offered its road drivers the following types of leave: short-term disability for up to six months, long-term disability for up to another twelve months, Family Medical Leave Act ("FMLA") for up to twelve weeks, military leave, and general leave, which was typically between five to thirty days. Doc. 42-2 at 13-14. FedEx granted general leave to full-time employees for "personal illness, injury, family problems, maternity, or other good reason." *Id.* at 111. According to the written policy in place at the relevant time, "[a] general leave may be extended at the request of the employee if the employee is unable to return

---

[1] FMCSA Medical Examiner Handbook at 51. The Handbook is available at https://www.fmcsa.dot.gov/sites/fmcsa.dot.gov/files/docs/mission/advisory-committees/mrb/83401/fmcsamedicalexaminerhandbook.pdf

to work at the end of 30 days." *Id.*  If an employee required more than thirty days of general leave, FedEx would do a reasonable accommodation review to determine if the leave could be extended.  *Id.* at 14.  Under FedEx's written policy, "[e]mployees returning from a general leave of absence in accordance with an approved timeframe will be restored to the same or equivalent position with the same pay, benefits, seniority, and other terms and conditions of employment that they had prior to going on leave . . . ."  *Id.* at 112.  However, FedEx also maintained an unwritten policy of revoking a driver's job class seniority if the driver could not return to work within six months after the safety department disqualified her from driving.  Doc. 42-4 at 38.[2]

## B.     Vaughn's Attempted Suicide and the Initial Response to the Incident

On September 27, 2012, Vaughn suffered an isolated psychotic episode and attempted suicide by shooting himself.  Doc. 42-4 at 10-12.  Vaughn's psychotic condition lasted for approximately thirty-six hours, and, prior to this episode, the only psychiatric condition Vaughn had suffered from was a "simple phobia" and dizziness.  *Id.* at 12, 20.

Shortly before Vaughn shot himself, Decatur police informed Darrel Poole, Vaughn's supervisor, that "Vaughn was barricaded in his apartment . . . and was

---

[2] Vaughn testified that during the year he was disqualified from driving, FedEx changed the policy from six months to eighteen months.  Doc. 42-4 at 38.

waving a gun and threatening suicide." Doc. 42-2 at 145. Poole then informed his field safety advisor, who, in turn, informed Mark Courter, FedEx's Manager of National Safety Compliance. *Id.*; doc. 42-3 at 13-15. When Courter learned of the situation, he deactivated Vaughn's driver number, thereby prohibiting him from working as a road driver, pending a review of FMCSA regulations and guidelines, and a medical recertification. Doc. 42-2 at 144. In light of Vaughn's attempted suicide, Courter decided that, based on the FMCSA Medical Guidelines, Vaughn had to wait twelve months before he could be recertified to drive a commercial vehicle. Docs. 41-1 at 4; 42-2 at 146-48; 42-3 at 18-21. Courter determined that Vaughn may not meet FMCSA's minimum driver qualification requirements based only on Vaughn's suicide attempt and without speaking to Vaughn or his doctors, or reviewing Vaughn's medical records. Doc. 42-3 at 18-21.

Vaughn remained in the hospital for approximately one week after his attempted suicide. *Id.* at 138. During that time, Vaughn applied for short term disability ("STD") with Cigna, FedEx's disability insurer, and he informed his supervisor, Poole, about his application for STD. Doc. 42-4 at 13, 15. FedEx then sent Vaughn a letter dated October 26, 2012 regarding disability leave, FMLA, and the continuation of health insurance coverage. Doc. 41-5 at 5-6. Among other things, the letter informed Vaughn that "[i]n the event an employee is on STD for six (6) months, the employee may apply for [long term disability] for continuation

of disability benefits for one (1) year," and that FedEx "does not extend job protection beyond six (6) months of STD or after FMLA time has been exhausted unless additional time is available under other leave of absence alternatives or applicable laws." *Id.* at 6.

After his release from the hospital, Vaughn understood that he was on STD leave, but he told Poole that he was able and willing to return to work. Doc. 42-4 at 13-15. Approximately four to five weeks later, Cigna denied Vaughn's disability application, which Vaughn attributes to the decision by his physician to release him to return to work. *Id.* at 14-16. Indeed, approximately one month after the incident, Vaughn's psychiatrist, Dr. Venkata Devabhaktuni, completed a form indicating that Vaughn suffered a brief reactive psychosis and could return to work at that time or "as required by [his] employer," but that "[i]f employer requires [Vaughn] to be off for [the] specified symptom-free duration, I can concur with it." Doc. 42-4 at 99-100. Thus, Vaughn told Poole again that he would like to return to work as a driver and that Cigna had cleared him to return. *Id.* at 14-16. Poole, however, informed Vaughn that "safety" determined he could not return for one year because of a DOT rule. *Id.* at 16.

Thereafter, in response to Vaughn's appeal, Cigna "reaffirm[ed] its previous denial of [disability] benefits," finding that it could not pay benefits past October 14 because self-inflicted injuries are excluded from coverage and because Vaughn's

medical records at the time contained "no information to indicate any ongoing psychosis." Doc. 42-4 at 84-85.[3] Vaughn points to nothing in the record to indicate he contacted FedEx about his leave status after Cigna denied his claim for STD, or before the end of the six-month period after his suicide attempt. *See* doc. 44. For its part, FedEx states that it has no documents to show Vaughn requested any other type of leave when Cigna denied his STD claim. Doc. 41-7 at 3.

## C. Vaughn's Reasonable Accommodation Review and Return to Work

In May 2013, Kimberly Morris, a human resources assistant, contacted Poole to inquire about Vaughn's status since more than six months had passed since his disqualification as a driver. Doc. 41-5 at 9. Morris told Poole that Vaughn would need to return to a non-driving position if one was available, or FedEx will need to proceed with separation. *Id.* Because no positions were available, *see id.*, Poole contacted Vaughn to ask if he wanted to retire, and Vaughn declined, doc. 42-4 at 16. Kimberly Cannon, an employee relations advisor, then called, and Vaughn told her that FedEx should have allowed him to return to work after six months because he had only suffered a brief psychotic break, was not depressed, and did not have a mental illness. Doc. 42-2 at 24. Cannon informed Vaughn that he would have to

---

[3] After Cigna denied his application for STD benefits, at Poole's suggestion, Vaughn applied for unemployment benefits. Doc. 42-4 at 34.

take part in a reasonable accommodation review to continue working with FedEx, and she sent him documentation for his doctor to complete. *Id.* at 25.

In early June 2013, Cannon and Poole spoke with Vaughn to begin the review process, and the form they completed reflects that Vaughn could not get a valid DOT medical card until twelve months after his suicide attempt, i.e., on September 27, 2013, but that he otherwise had no restrictions, and was able to perform all the functions of his job. Doc. 42-4 at 88-89. The form further reflects that Vaughn was not requesting any accommodation and was willing to accept a position as a dock worker if it did not affect his seniority and full-time status. *Id.* In addition, Dr. Devabhaktuni certified at that time that, to his medical knowledge, Vaughn did not have a mental impairment that limits a major life activity. *Id.* at 94-95.

Cannon submitted the form and medical certification to FedEx's review committee, and the committee chose to offer Vaughn two options: (1) general leave until September 27, 2013 (the end of the one-year waiting period), with Vaughn's company seniority protected, but his job class seniority would reset to the date he returned as a road driver; or (2) temporary assignment to a dock worker position, and Vaughn's job class seniority would reset to the date he returned to work as a road driver. Doc. 42-4 at 96-97. Vaughn protested the decision to reset his job class seniority because seniority determines which routes he would drive, and how much money he earns. Docs. 42-4 at 37; 42-2 at 8. Thus, by losing his job class seniority,

Vaughn would earn significantly less when he returned to a driving position. Doc. 42-4 at 37.

Vaughn called Dale Davis, the Regional Vice President of Operations, and told Davis that FedEx should have allowed him to return to work within six months based on the medical guideline that applies to brief psychotic disorders.[4] Docs. 42-4 at 28-29; 53 at 22-23, 29. Davis then contacted the safety and human resources departments to discuss whether FedEx had applied the proper guidelines and made the correct decision. Doc. 42-3 at 161; 53 at 23-29. Based on that discussion, FedEx decided to allow Vaughn to have a medical exam by a DOT certified physician, Dr. Eric Roth, to see if Vaughn could be medically certified to drive and whether Vaughn could return to work prior to September 27, 2013. Docs. 42-4 at 29; 53 at 28-29.

Before Vaughn's exam with Dr. Roth, Courter's assistant sent Dr. Roth an email with the FMSCA Medical Guidelines and a newspaper article about Vaughn's suicide attempt, and Courter sent Dr. Roth the relevant Guideline for major depression. Doc. 42-3 at 41-44, 171-73. According to Courter, it is normal practice for FedEx to send a physician relevant information and guidelines prior to an examination to be sure the employee makes the appropriate disclosures to the

---

[4] Vaughn also contends that a DOT supervisor told him that there was no regulation that prevented him from returning to work, doc. 42-4 at 28-29, and FedEx objects to this evidence as hearsay, doc. 50 at 8, n.11. Because Vaughn does not remember the name of the supervisor and cannot call the supervisor to testify at a potential trial of this matter, the court sustains FedEx's objection.

physician.  Doc. 42-3 at 44-47.  *See also* doc. 53 at 33-37.  Dr. Roth did not examine

Vaughn on the date of the scheduled exam, and read instead from the Guideline for

major depression.  Doc. 42-4 at 29, 42.  Dr. Roth told Vaughn that he would have to

wait a year from his suicide attempt to have a medical certification exam, and he

certified that Vaughn does not meet DOT standards in light of his suicide attempt.

*Id.* at 42, 104-06.

Upset that FedEx had interfered with Dr. Roth's exam, Vaughn went to his

personal physician, Dr. Thomas Lockard, who certified that Vaughn was eligible to

drive a commercial vehicle.  Docs. 42-2 at 192-93; 42-4 at 25, 29-30.  In addition,

Dr. Devabhaktuni wrote a letter stating that Vaughn's "mood disorder" had

improved and that "Vaughn is now stable and doing very well, [and] [h]e should

return to work as a professional truck driver immediately."  Doc. 42-2 at 213.

After receiving Dr. Roth's and Dr. Lockard's conflicting certifications, FedEx

decided to follow Dr. Roth's recommendations, and notified Vaughn that he had to

wait one year after his suicide attempt before he could be recertified to drive.  Doc.

42-4 at 32, 108-09.  The letter also offered Vaughn the two options that the

committee had previously approved.  *Id.* at 108-09.  Faced with those two options,

which he viewed as unacceptable, Vaughn agreed under "great protest and duress"

to accept general leave through September 27, 2013 and for his job class seniority

to reset to the date he returned to work.  Doc. 42-2 at 32-33, 111.

Shortly before returning to work in September, Vaughn filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on his disability, and in particular, his "brief reactive psychosis." Docs. 42-4 at 36, 115. Vaughn filed this lawsuit after obtaining a right to sue letter. Doc. 1-2 at 2.

## III.    ANALYSIS

Vaughn asserts that FedEx violated the ADA by discriminating against him based on a perceived disability when it refused to reinstate him as a road driver before the expiration of the twelve-month period following his suicide attempt and failed to protect his job class seniority while he was on leave, and by retaliating against him after he complained of the discrimination. Docs. 1 and 44. FedEx argues that Vaughn cannot establish essential elements of his claims or that its reasons for its actions are pretextual. Doc. 34-1. The court addresses the parties' contentions in turn.

### A.    Discrimination Claims

The ADA prohibits an employer from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Where, as here, a plaintiff relies on circumstantial evidence to prove a disability discrimination claim, the court analyzes the claim under the *McDonnell Douglas* burden-shifting framework. *See Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir.

2007) (citation omitted); *Durley v. APAC, Inc.*, 236 F.3d 651, 657 (11th Cir. 2000).

Under that framework, Vaughn must first establish a prima facie case of discrimination, by showing that: (1) he had an actual or perceived disability; (2) he was qualified to perform the essential functions of the job, either with or without reasonable accommodation; and (3) FedEx subjected him to an adverse employment action because of his actual or perceived disability. *See Williams v. Motorola, Inc.*, 303 F.3d 1284, 1290 (11th Cir. 2002). If Vaughn establishes his prima facie case, the burden shifts to FedEx to present a legitimate, nondiscriminatory reason for its actions. *Wascura v. City of S. Miami*, 257 F.3d 1238, 1242 (11th Cir. 2001). If FedEx satisfies this minimal burden, the burden shifts back to Vaughn to "demonstrate that the reason given was a pretext for disability discrimination." *Ward v. United Parcel Serv.*, 580 F. App'x 735, 740 (11th Cir. 2014).

Even assuming that Vaughn can establish a prima facie case by showing that he was qualified to work as a road driver and that FedEx regarded him as disabled by disqualifying him as a road driver for one year,[5] to survive summary judgment Vaughn must create a question of fact regarding whether FedEx's reasons for its actions are pretextual. Vaughn may show pretext "directly, by persuading the court that a discriminatory reason more likely than not motivated [FedEx], or indirectly, by showing 'such weaknesses, implausibilities, inconsistencies, incoherencies, or

---

[5] Vaughn concedes that he was not actually disabled. *See* doc. 44 at 23.

13

contradictions in [FedEx's] proffered legitimate reasons for its action that a reasonable fact finder could find them unworthy of credence.'" *Paschal v. United Parcel Serv.*, 573 F. App'x. 823, 825 (11th Cir. 2014) (quoting *Alvarez v. Royal Atlantic Developers, Inc.*, 610 F.3d 1253, 1265 (11th Cir. 2010))

        1.    <u>FedEx's reliance on the FMSCA medical guidelines to disqualify Vaughn from driving for one-year</u>

FedEx contends that it made the decision to disqualify Vaughn as a road driver for one year following his attempted suicide based on DOT regulations and FMCSA's medical guidelines. Doc. 34-1 at 26-29. "Reliance on DOT regulations, absent pretext, is a defense to a truck driver's ADA lawsuit." *Rice v. Genova Products, Inc.*, 978 F. Supp. 813, 822 (N.D. Ind. 1997). *See also* 29 C.F.R. § 1630.15(e) ("It may be a defense to a charge of discrimination under this part that a challenged action is required or necessitated by another Federal law or regulation . . . ."). Moreover, although the medical guidelines "are only advisory and nonbinding," "the views of an agency such as DOT implementing a regulatory scheme designed to ensure the safety of our nation's highways 'constitute[s] a body of experience and informed judgment' to which employers may properly resort for guidance." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 994 (10th Cir. 2001) (quoting *United States v. Mead Corp.*, 533 U.S. 218 (2001)). Thus, an employer may reasonably rely on the guidelines to determine if an individual is qualified to drive commercial vehicles, and reliance on the guidelines is not evidence of

discriminatory animus if the employer applies the guidelines consistently and uniformly. *See id.* at 995.

Under the applicable DOT regulations, a person is not qualified to drive a commercial motor vehicle if he or she has a "mental, nervous, organic, or functional disease or psychiatric disorder likely to interfere with his/her ability to drive [the vehicle] safely . . . ." 49 C.F.R. § 391.41(b)(9). And, the FMSCA medical guidelines recommend a minimum one-year symptom-free waiting period "following a severe depressive episode, a suicide attempt, or a manic episode" before a driver may receive a medical examination for DOT certification. FMSCA Medical Examiner Handbook at 196, 198. Vaughn challenges FedEx's reliance on the regulations and guidelines by arguing that the guideline FedEx relied on applies only to a diagnosis of major depression, and that the guideline that applies to his actual diagnosis of brief reactive psychosis recommends a waiting period of only six months. Doc. 44 at 9-11, 28-29. To begin, despite Vaughn's insistence that he was never diagnosed with major depression and was only diagnosed with brief reactive psychosis, a consultation report signed after his suicide attempt reflects that Vaughn has a history of depression and that his diagnosis was "[m]ajor depression with psychotic features versus brief psychosis." Doc. 42-3 at 142-42. Moreover, Vaughn's contention regarding when the guideline may apply is belied by the FMSCA medical guidelines, which state that a determination regarding the waiting

period and certification "is not based on diagnosis alone" and an individual's "ability to drive safely and effectively should not be determined solely by diagnosis but instead by an evaluation focused on function and relevant history." Medical Examiner Handbook at 196, 198. And, the guidelines note that "[i]f more than one waiting period applies (because of multiple conditions or comorbid diseases), [the medical examiner should] examine the driver for certification after the completion of the longest waiting period." *Id.* Based on those directives and Vaughn's relevant history of attempted suicide, FedEx reasonably determined that the one-year waiting period should apply before Vaughn could obtain certification to drive a commercial vehicle. Therefore, because Vaughn has not pointed to any evidence that FedEx did not apply FMCSA's medical guidelines consistently and uniformly with respect to other drivers, he has failed to show that FedEx's reliance on the guidelines is pretext for discrimination.

2.    FedEx's reliance on its alleged internal policy to reset Vaughn's job class seniority

Next, FedEx contends that it followed its own internal policy to reset Vaughn's job class seniority when he returned to work after the one year waiting period. Doc. 34-1 at 27-28. In particular, FedEx asserts that it has an unwritten policy providing that when a driver is disqualified by its safety division from driving a commercial vehicle, the driver's job class seniority is protected only for the first six months of disqualification unless the driver obtains certain approved leaves of

16

absences. *Id.* at 16, 27-28. Vaughn counters that this reason is contrary to FedEx's written policy providing that "[e]mployees returning from a general leave of absence in accordance with an approved timeframe will be restored to the same . . . seniority that they had prior to going on leave . . . ." Docs 42-2 at 112; 44 at 30-31.

Vaughn's contention regarding pretext is unavailing. To begin, Vaughn has not shown he was on approved general leave when FedEx made the decision to reset his job class seniority. The record reflects instead that Vaughn did not contact FedEx regarding his leave status after Cigna denied his application for STD benefits. *See* doc. 42-4 at 13; 41-7 at 3. Moreover, Vaughn does not dispute FedEx's contention that it has no documentation that he requested any type of leave when Cigna denied his claim for STD. *See* docs. 41-7 at 3; 44. And, it was after the expiration of the six-month period allowed for STD that FedEx contacted Vaughn regarding his status and eventually began the review process, which led to the decision to reset Vaughn's job class seniority. *See* docs. 41-5 at 5-6; 42-4 at 16, 24-25, 96. In other words, because FedEx made the decision to reset Vaughn's job class seniority at a time when Vaughn was not on an approved general leave of absence, its decision was not contrary to its written policy. Relatedly, FedEx's failure to produce a written policy on this point, as Vaughn correctly notes, *see* doc. 44 at 7, n.2, does not undermine FedEx's contention. Afterall, Vaughn admits that he was aware of the unwritten policy in question. Doc. 42-4 at 38. Based on this record, FedEx's decision to reset

Vaughn's job class seniority was consistent with its unwritten policy and not contrary to its leave policy. Thus, Vaughn cannot rely on FedEx's purported failure to follow its leave policies to show pretext.

Vaughn attempts also to prove discriminatory animus based on evidence that FedEx allowed five other employees to return to work after one year or more without resetting their job class seniority. Doc. 44 at 21-22. None of those employees, however, are valid comparators because, unlike Vaughn, they were on approved leave, or working another position, when FedEx decided to allow them to maintain their job class seniority. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1224 (11th Cir. 2019) (en banc) ("[A] plaintiff must show that []he and [his] comparators are 'similarly situated in all material respects.'"). First, as Vaughn concedes, two of the employees were out on long term disability leave for approximately fourteen to sixteen months due to cancer. *See* docs. 44 at 21; 42-4 at 35-36. Next, two other employees were out due to workers' compensation injuries. Doc. 44 at 22. The retention of these four individuals' job class seniority is consistent with FedEx's unwritten policy that employees returning to their positions after an approved leave of absence could have maintained their job class seniority. *See* docs. 42-4 at 38; 53-1 at 6. Put simply, because Vaughn has not shown he was on approved leave at the time FedEx decided to follow its unwritten policy and reset his job class seniority,

FedEx's decision to allow these four employees to maintain their seniority is not evidence of discriminatory animus.

The fifth individual Vaughn cites is a driver in Atlanta, Georgia who was disqualified as a driver for more than a year due to a pending criminal charge, and who retained his job class seniority when he returned to the driver position after his criminal charge was stricken from his record. Doc. 42-2 at 28. According to Cannon, FedEx made an exception to its unwritten driver disqualification policy because the judge presiding over the employee's case took more than six months to resolve and strike the charge from the employee's record, and "the delay was beyond [the employee's] control." *Id.* In addition to this reason, FedEx notes also that the employee in question never missed work. *See id.* Based on this record, FedEx's actions with respect to that driver do not indicate that its decision to reset Vaughn's job class seniority was motivated by discriminatory animus.

Ultimately, "it is not [the court's] role to second-guess the wisdom of an employer's business decisions—indeed the wisdom of them is irrelevant—as long as those decisions were not made with a discriminatory motive." *Alvarez*, 610 F.3d at 1266 (citation omitted). The evidence here is that FedEx followed its unwritten policy of resetting a driver's job class seniority if he or she was disqualified for more than six months as a driver and was not on certain approved leaves of absence. In the absence of other evidence to suggest discrimination, this is a legitimate reason

that this court may not second guess. Therefore, Vaughn's discrimination claims fail because he has not shown that FedEx's reasons for disqualifying him from driving for one year following his attempted suicide and for resetting his job class seniority are pretext for discriminatory animus.

### B.    <u>Retaliation Claim</u>

Vaughn asserts that FedEx retaliated against him after he complained of its discriminatory acts and filed a charge of discrimination. Docs. 1; 44 at 31-33.[6] The record reflects, however, that FedEx had decided to carry out the alleged retaliatory acts before Vaughn engaged in protected conduct when he complained internally to Davis in July 2013 and when he filed his EEOC charge that August. *See* docs. 42-4 at 28-29; 53 at 22-23, 29. An employer's decision to "proceed[] along lines previously contemplated, though not yet definitively determined, is no evidence whatever of causality." *Clark County School Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). Thus, the close temporal proximity between Vaughn's conduct and the alleged adverse events do not suggest causation.[7] In the absence of any other

---

[6] In opposition to summary judgment, Vaughn states that "[t]o the extent [his] Complaint appears to assert a retaliation claim based on the ADA, [he] agrees to forego those claims." Doc. 44 at 22, n.6. However, because Vaughn offers argument in support of his retaliation claim, *id.* at 31-33, the court will address the claim on the merits in an abundance of caution.

[7] To establish a prima facie case, Vaughn must show "(1) that [he] engaged in statutorily protected conduct, (2) that [he] suffered an adverse employment action, and (3) that a causal connection exists between the two." *Batson v. Salvation Army*, 897 F.3d 1320, 1329 (11th Cir. 2018) (citing *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006)).

evidence to support an inference of causation, *see* doc. 44, Vaughn has failed to show that retaliatory animus motivated FedEx's actions to make him wait for a year before recertification and to reset his job class seniority. Accordingly, Vaughn's retaliation claim fails because he cannot establish a prima facie case, or alternatively, for the same reason as the discrimination claims, he cannot show that FedEx's reasons for engaging in the challenged actions are pretextual.

## IV.  CONCLUSION

For the reasons discussed above, FedEx Freight's motion for summary judgment is due to be granted. The court will issue a separate order in conformity with this memorandum opinion.

**DONE** the 10th day of October, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE